UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAY WATTS                                              CIVIL ACTION

VERSUS                                                 NO.  08-5095

NEWTON SCHWARTZ, et al.                                SECTION  "N"  (2)

# **ORDER and REASONS**

Before the Court are several motions:

(1) Motion for Default Judgment as to Seth Cortigene ("Cortigene") (Rec. Doc. 54), filed by Plaintiff Jay Watts ("Watts");

(2) Motion to Abate (Rec. Doc. 56) filed by Defendant Newton Schwartz ("Schwartz"); and

(3) Motion to Dismiss for Lack of Jurisdiction (Rec. Doc. 59) also filed by Schwartz.[1]

The motions are all opposed. After reviewing the complaint, the memoranda, the Orders of this Court in the underlying case, and the applicable law, the Court rules as set forth herein.

## **I. BACKGROUND**

"Once more unto the breach, dear friends, once more." William Shakespeare, *King Henry the Fifth*, act 3, sc. 1 (1600). The instant case arises from Cortigene and Schwartz's

---

[1] Also before the Court is the Motion for Partial Summary Judgment (Rec. Doc. 43) filed by Watts. The Court does not rule on that motion in the instant Order.

representation of Watts in a declaratory judgment action brought in this Court by Watts' former employer, Superior Diving Company, Inc. ("Superior Diving"), seeking judgment that it was no longer obligated to pay maintenance and cure to Watts for injuries he sustained during a decompression incident. Watts filed a counterclaim pursuant to the Jones Act and general maritime law, for negligence and unseaworthiness. *See Superior Diving Co., Inc, v. Watts*, 2008 WL 1926977, at *2 (E.D. La. April 25, 2008) (hereinafter, "underlying case," under Civil Action No. 05-197). The procedural history of the underlying case—featuring more unnecessary twists and turns than a Dan Brown novel—has aptly been described as "epic," *id.*, and the Court has neither desire nor intent to recount that quagmire at full length. Those otherwise inclined may read a full description of the procedural history in Record Documents 301 and 302 of the docket of the underlying case. For present purposes, a brief recitation of pertinent facts will suffice.

On January 24, 2007, after several months of discovery and on the eve of hearing a motion for summary judgment filed by Superior Diving, this Court issued a 60-day Order of Dismissal after it was advised by the parties that the underlying case had settled. At the close of that 60-Day Order, Watts moved to reopen the case, and Superior Diving moved to enforce the settlement. The Court denied the motion to reopen and granted the motion to enforce on August 24, 2007. Watts then filed a motion for reconsideration on September 11, 2007, and also moved to enroll new counsel, Robert Homes. Mr. Homes was enrolled and Mr. Cortigene withdrew from the case, but Cortigene later filed an intervention (along with Schwartz and another attorney sued as a third party defendant in this case, though the motion was denied as to them) seeking attorney's fees and costs from the settlement. The Court would eventually hold an evidentiary hearing on the question of whether settlement had ever been consummated. The

2

Court concluded that it had not and, then, over the strenuous objection of Watts' counsel, granted Superior Diving's long-pending motion for summary judgment.

Meanwhile, Watts asserted a counterclaim against Cortigene and third-party demand against Schwartz for malpractice in response to Cortigene's motion to intervene, which claims were severed from the substantive claims dealt with on summary judgment and from the issues relating to the failed settlement. However, Watts also initiated parallel proceedings against the two Defendants in Mississippi state court for malpractice, negligence, gross negligence, breach of contract, breach of fiduciary duty, fraud, and misrepresentation. The granting of the motion for summary judgment mooted Cortigene's intervention, since there was no settlement from which he could collect. As to the malpractice counterclaim and third-party demand, the Court stayed the malpractice claims in favor of the parallel state court litigation. This state court proceeding was removed to the Southern District of Mississippi on April 9, 2008, and then, on the Defendants' motion, venue was transferred to this Court on December 5, 2008.

## II. ANALYSIS

### A. Motion to Dismiss for Lack of Jurisdiction

Defendant Schwartz moves to dismiss for lack of personal jurisdiction. When a nonresident defendant so moves, the plaintiff bears the burden of showing that personal jurisdiction exists. *See Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When a court rules on this issue without a full evidentiary hearing, plaintiffs need only make a prima facie showing of jurisdiction. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). In determining whether plaintiffs have made a prima facie showing of jurisdiction, the Court accepts as true the allegations in the complaint, unless controverted by opposing affidavits, and resolves all factual

conflicts in favor of the plaintiff. *Id.* In making its determination, the Court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of . . . recognized [discovery] methods." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

A court has personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) the forum state's exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *See Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Because Louisiana's long-arm statute extends jurisdiction to the full limits of due process, *see* LA. REV. STAT. § 13:3201(B), the Court must determine only whether the exercise of its jurisdiction in this case satisfies federal due process requirements. The exercise of personal jurisdiction over a nonresident defendant satisfies due process when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with that state and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw*, 167 F.3d at 211 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Minimum contacts may give rise either to "specific" personal jurisdiction or "general" personal jurisdiction. *See id.* Specific jurisdiction exists when a plaintiff's cause of action arises from or is related to the defendant's minimum contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); *Wilson*, 20 F.3d at 647. General jurisdiction will attach, even if the act or transaction sued upon is unrelated to the defendant's contact with the forum state, if the defendant has engaged in "systematic and continuous" activities in the forum state. *See Helicopteros*, 466 U.S. at 414 n.9; *Wilson*, 20 F.3d at 647. This case presents only the

4

question of specific jurisdiction.

To determine whether specific jurisdiction exists, courts examine whether the defendant purposefully availed himself of the privileges of conducting activities in the forum state, and whether the cause of action arises out of or relates to those activities. *See Guidry v. United States Tobacco Co., Inc*., 188 F.3d 619, 625 (5th Cir. 1999); *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc*., 754 F.2d 542, 547-48 (5th Cir. 1985). A defendant's connection with the forum state must be such that he "should reasonably anticipate being haled into court" there. *Latshaw*, 167 F.3d at 211 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). To determine whether specific jurisdiction exists, the Fifth Circuit has developed a three-step analysis. *Seiferth v. Helicopteros Atuneros, Inc*., 472 F.3d 266, 271 (5th Cir. 2006). The Court must look to (1) whether the defendant had minimum contacts and purposefully directed its activities toward the forum state or purposefully availed itself of conducting activities there; (2) whether the cause of action arises out of defendant's contacts with the forum state; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Id*. (citing *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)).

Once a court determines that a plaintiff's cause of action arose out of defendant's minimum contacts with the forum state, that court will next consider whether asserting specific jurisdiction offends "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. This prong of the analysis requires consideration of "the interest of the state in providing a forum for the suit, the relative conveniences and inconveniences to the parties, and the basic equities." *Stuart*, 772 F.2d at 1191 (quoting *Southwest Offset, Inc. v. Hudco Publ'g Co.*, 662 F.2d 149, 152 (5th Cir. 1980)).

In this case, the Court has little difficulty in concluding that it can properly exercise personal jurisdiction over Schwartz. The Defendant argues that he is not a member of the Louisiana bar, does not regularly practice law in Louisiana, maintains no offices in the state and does no business here, and was never admitted *pro hac* in the underlying case. It is certainly the case that Schwartz is not admitted to the Louisiana bar, and there is some question as to whether he should have been admitted to practice *pro hac* in the Eastern District at some point during the underlying case to fully comply with Local Rules. But these facts are immaterial to the question of whether the Court can properly exercise jurisdiction over Mr. Schwartz. The docket in the underlying case clearly notes that Schwartz was counsel of record from the initiation of that case until October 4, 2007, when he was terminated from the case upon his own motion. *See* Rec. Doc. 161 of underlying case. He joined with Cortigene in a motion for leave to intervene in the case to recover fees and costs from any settlement. *See* Rec. Doc. 153 of underlying case. This motion was denied as to him on the sole grounds that he was at that time "currently counsel of record for Mr. Watts and [has] never withdrawn." *See* Rec. Doc. 158 of underlying case. The docket of the underlying case reveals numerous documents filed by Mr. Schwartz and he participated in oral argument before this Court and in status conferences, his participation memorialized in various minute entries. *See, e.g.*, Rec. Docs. 199, 254, 255, 271, and 284 of the underlying case.

Based on this record of participation in the underlying case and the resulting tort claim that arises from his participation in that case, the Court concludes that Schwartz purposefully availed himself of the privileges of conducting activities in Louisiana. The Court also concludes that the present cause of action arises out of Schwartz's minimum contacts with Louisiana, and

that the exercise of this Court's jurisdiction over him is fair and reasonable. *See Simon v. United States*, 644 F.2d 490, 407 n.10 (5th Cir. 1981) ("Louisiana courts have consistently found its long arm statute applicable, and constitutionally permissible, where a single act in Louisiana, by a person or thing for which the non-resident tortfeasor is responsible, contributes to the injury."). Accordingly, the motion is denied.

**B. Motion for Default Judgment as to Seth Cortigene**

Plaintiff Watts moves for a default judgment as to Seth Cortigene. After the notice of default was entered, the Court *sua sponte* ordered Cortigene to update his address with the Clerk and answer the complaint. The Court did so because it was concerned that Cortigene was not receiving filings in this matter because he was listed as being represented even though he was actually proceeding *pro se*. *See* Order of June 5, 2009 (Rec. Doc. 60). Cortigene has since complied with the Order and filed his answer. *See* Answer (Rec. Doc. 65). Accordingly, the motion is denied as moot.

**C. Motion to Abate**

Defendant Schwartz also moves to abate or stay these proceedings, arguing that issues to be decided on appeal in the underlying case may affect issues of liability and damages in this malpractice suit.[2] A district court has the inherent power to stay its proceedings. This power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. American Co.*, 299 U.S. 248, 254 (1936). This is best accomplished by the "exercise of

---

[2] The underlying case is calendered to go before the Fifth Circuit Court of Appeal for oral argument on August 3, 2009.

judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55.

In this case, the Fifth Circuit's resolution of the issues related to this Court's granting of summary judgment in the underlying case may affect the scope of liability and the damages that would be available to Watts in any malpractice action. This may impact the Court's deliberations on summary judgment or other dispositive motions, and knowing the precise scope of Watts' claim will definitely allow the parties and the Court to direct discovery in this case more efficiently. Further, the Court's Order declining to recuse itself on Watts' motion is also under appeal. *See Superior Diving Co., Inc. v. Watts*, 2008 WL 2097152 (May 16, 2008 E.D. La.). With these considerations in mind, the Court finds that the competing interests in this case militate in favor of a stay of these proceedings until such time as the Fifth Circuit has ruled on the appeal of the underlying case.[3] Accordingly, the motion is granted and these proceedings are stayed.

### III. CONCLUSION

Considering the foregoing, **IT IS ORDERED** that

(1) the Motion for Default Judgment (Rec. Doc. 54) is **DENIED AS MOOT**;

(2) the Motion to Abate (Rec. Doc. 56) is **GRANTED** and the case is **STAYED** during

---

[3] In an abundance of caution and for the sake of clarity, the Court notes that this stay shall continue only through the pendency of the appeal of the underlying case to the Fifth Circuit, and not through the conclusion of any state bar disciplinary proceedings that may be pending against any party to this case. The Court rejects Schwartz's argument that the "quasi-criminal" nature of state bar disciplinary proceedings requires a stay of an associated civil proceeding. In general, parallel civil and criminal proceedings are not objectionable in the absence of substantial prejudice to the rights of the parties involved. *See United States v. Kordel*, 397 U.S. 1, 11 (1970); *Standard Sanitary Manufacturing Co. v. United States*, 226 U.S. 20, 52, (1912); *S.E.C. v. First Fin. Group of Texas*, 659 F.2d 660, 667 (5th Cir. 1981).

the pendency of the appeal of the underlying case; and

(3) the Motion to Dismiss for Lack of Jurisdiction (Rec. Doc. 59) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk is directed to administratively close the case for statistical purposes subject to being re-opened upon proper motion of either party.

New Orleans, Louisiana, this 1st day of July 2009.

_____
**KURT D. ENGELHARDT**
**United States District Judge**